[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-11591
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cv-00074-LSC


BRIAN JONES,

Plaintiff-Appellant,

versus

STANLEY WEBB,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 8, 2013)

Before MARTIN, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Brian Jones sued Stanley Webb, a deputy with the Sheriff's Office in Marion

County, Alabama, for excessive force under 42 U.S.C. § 1983.  A jury found in

favor of Deputy Webb.  Mr. Jones now appeals, arguing that the district court erred in allowing expert medical testimony, not granting him a new trial due to the prejudice he suffered from such evidence, and giving the jury an adapted and modified *Allen* charge.[1]  He also contends that he is entitled to a new trial due to the cumulative effect of the district court's errors.  After review of the parties' briefs and the record, we affirm.

## I.

To provide context for the issues raised on appeal, we briefly summarize the evidence at trial.  As set forth below, Mr. Jones and Deputy Webb presented diametrically opposed versions of their encounter.

On the evening of January 16, 2007, Mr. Jones parked his truck on the side of County Road 38, a short distance from his home.  At around 8 or 9 p.m., Deputy Webb pulled up next to Mr. Jones and rolled down his window, but Mr. Jones did not appear to acknowledge him.  Deputy Webb then backed up his car, activated his blue lights, and positioned himself right behind Mr. Jones' truck.  Deputy Webb inquired if Mr. Jones was ok, and took his license.  Because Deputy Webb smelled alcohol on Mr. Jones, he instructed Mr. Jones—who had drunk some wine (a couple of sips according to Mr. Jones and two glasses according to Deputy Webb)—to get out of the car for a field sobriety test.  During the field sobriety test,

---

[1] *See generally Allen v. United States,* 164 U.S. 492, 501 (1896); Eleventh Cir. Pattern Jury Instructions, Civil, Basic Instruction No. 9 (2005).

2

Mr. Jones' wife and son pulled up in their own vehicle.

According to Mr. Jones, his wife tried to explain that he was looking for the body of his dead dog, but Deputy Webb became angry and cursed at her. When Mr. Jones told him not to speak to his wife that way, Deputy Webb grabbed Mr. Jones' left hand and pulled Mr. Jones to the ground face first so that his right hand was pinned underneath him. Deputy Webb told Mr. Jones to give him his right hand so that he could handcuff him. Mr. Jones replied that he could not because that hand was pinned underneath his body. Deputy Webb then struck Mr. Jones on his back, sides, neck, and head with the flashlight he was holding. As Mr. Jones struggled to protect himself, Deputy Webb rolled him onto his back and used the flashlight to choke him. Eventually Mr. Jones lost consciousness because Deputy Webb cut off his air supply.

According to Deputy Webb, Mrs. Jones told him that if her husband was going to jail, he needed his medicine. Deputy Webb responded that no one was going to jail at that time, and twice asked Mrs. Jones and her son to get back in their car. They, however, did not comply. Mr. Jones said to Deputy Webb, "You S.O.B., you don't tell my son what to do." When Mrs. Jones tried to explain the situation concerning the family's dog, Mr. Jones exclaimed, "My f'ing dog has died, you f'ing S.O.B.," and took a swing at Deputy Webb with his clenched fist. Deputy Webb avoided the punch, and grabbed and handcuffed Mr. Jones' left arm.

3

Because Mr. Jones continued to struggle, Deputy Webb took him to the ground in an attempt to handcuff the other arm. After fighting for a while, Deputy Webb grew tired and let Mr. Jones stand up. Mr. Jones took a swing at Deputy Webb with his cuffed hand, grazing Deputy Webb's face. Deputy Webb then rushed at Mr. Jones and the two men fell down an embankment into a ditch, with Mr. Jones ending on top of Deputy Webb, who was face down on the ground. Deputy Webb eventually pulled Mr. Jones off. Deputy Webb maneuvered his way on top of Mr. Jones' chest, but Mr. Jones bit Deputy Webb's arm and began spitting. Deputy Webb then punched Mr. Jones in the face, and the two men continued to struggle. Mr. Jones pushed Deputy Webb off. Deputy Webb found his flashlight, and struck Mr. Jones in the leg as Mr. Jones was trying to kick him.

## II.

We review the district court's admission of expert testimony under Rule 702 for abuse of discretion. *See United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013). The same standard of review applies to the district court's denial of Mr. Jones' motion for a new trial and the *Allen* charge. *See Lambert v. Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001) (new trial); *United States v. Woodard,* 531 F.3d 1352, 1364 (11th Cir. 2008) (*Allen* charge).

## A.

Mr. Jones first contends that Deputy Webb's medical expert, Dr. Mark

4

Choquette, gave an opinion that went beyond his report when he falsely testified that the "CT scan reports in [Mr.] Jones' emergency room records could be interpreted to mean . . . that [Mr.] Jones did not have any head injuries, not even a bump on the head."  Brief for Appellant at 17 (citing Dr. Choquette's testimony, D.E. 89 at 157–59).  In the cited pages of the transcript, Dr. Choquette testified on direct examination that the CT scans, according to the radiologist's impressions, revealed "no evidence of nasal bone fracture" (meaning "no injury" to the bones in the nose), a "normal impression" with respect to the tissues in the head, and "no obvious injury" to the skull or the brain.

We disagree with Mr. Jones' characterization of Dr. Choquette's testimony, and find no abuse of discretion by the district court.  In his expert report, Dr. Choquette stated that he had reviewed some of Mr. Jones' medical records, and the emergency room records showed that Mr. Jones did not have a skull fracture, nasal fracture, facial fracture, orbital fracture, or jaw fracture.  *See* D.E. 52 at 1–2.  Thus, assuming he was testifying at trial as an expert in reading from the emergency room records—including the radiologist's impressions of the CT scans—Dr. Choquette's testimony did not go beyond the expert report and did not surprise Mr. Jones.  Indeed, at a hearing on Dr. Choquette's testimony, Mr. Jones' counsel conceded that "there is no fact issue about the injuries that Mr. Jones did not have[.]"  D.E. 89 at 131.

5

Contrary to what Mr. Jones argues in his brief, Dr. Choquette did not testify in the cited pages that Mr. Jones did not have any knots or bumps on his head. Indeed, on cross-examination Dr. Choquette admitted that some of the medical records (including some prepared by a nurse) showed someone "who had experienced numerous blows of some kind by something," described an injury to Mr. Jones' left eye, and noted bruising to the face and arms. *See* D.E. 89 at 169, 172–73, 178. Dr. Choquette also conceded that Mr. Jones was "struck around the head and face with something." *See id.* at 182. We therefore reject Mr. Jones' contention that Deputy Webb and his counsel perpetrated a fraud on the court by knowingly presenting false testimony on direct examination.

Dr. Choquette did say that one of the CT scans did not show any knots on Mr. Jones' head, but that was on cross-examination in response to a question asked by Mr. Jones' counsel, and even then he acknowledged that normally CT scans are not ordered to look for bumps or knots on the head. *See id.* at 183–84. Given that his own counsel asked the question, Mr. Jones cannot complain about Dr. Choquette's answer or the use of that answer by Deputy Webb's counsel during closing argument. *See, e.g., United States v. Sarras*, 575 F.3d 1191, 1216 (11th Cir. 2009) ("Because Sarras' question elicited the very testimony about which he

now complains, he is entitled to no relief.").[2]

## B.

Mr. Jones next asserts that the district court erred under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny by allowing Dr. Choquette to testify that, if Mr. Jones' description of the assault was accurate, he would have expected to see lacerations to the scalp, skull fractures, torn blood vessels, and brain tissue damage, as well as some damage to the trachea and larynx. *See* D.E. 89 at 163–65. As Mr. Jones sees it, Dr. Choquette did not sufficiently describe the methodology he used to reach his opinion, thus rendering the opinion unreliable. *See* Appellant's Brief at 29.

Again, we disagree with Mr. Jones. Dr. Choquette was an experienced emergency room physician who had treated hundreds of patients with blunt force trauma to the head caused by objects of one kind or another, and he was using that experience, combined with Mr. Jones' medical records, to render his opinion. *See, e.g.,* D.E. 89 at 120–21. And that opinion was nothing more than an opinion as to what types of injuries would normally result from certain types of blows to, and force exerted on, the face, head, and neck. The district court concluded that the opinion was reliable because emergency room doctors have to "make evaluations as to whether or not there are internal injuries, whether or not it's child abuse . . . ,

[2] Mr. Jones' counsel did not review the CT scans until after the trial. *See* Appellant's Brief at 19.

so they have to evaluate how things occurred from time to time."  D.E. 89 at 135–36.  That ruling was not an abuse of discretion. Our cases have made clear that experience can be a proper basis for expert testimony, *see United States v. Garcia,* 447 F.3d 1327, 1336–37 (11th Cir. 2006), and here we conclude that the district court did not abdicate its role as gatekeeper under *Daubert* in concluding that reliability had been sufficiently established, and in allowing Dr. Choquette to testify as he did.

### C.

Mr. Jones argues that the district court erred by giving the jury a modified *Allen* charge adapted from the Eleventh Circuit Pattern Jury Instructions.[3]   In our view, Mr. Jones has not shown reversible error.

The jury began its deliberations around noon on Friday, January 20, 2012, went home for the weekend, and resumed its deliberations on the morning of Monday, January 23, 2012.  Sometime after 3 p.m. on January 23, the foreperson sent a note to the district court indicating that the jury was "at a deadlock."  The district court gave the jury an adapted and modified *Allen* charge over Mr. Jones' objection after considering the positions of the parties, the expenditure of the

---

[3] The instruction omitted paragraphs 4 and 5 of the pattern civil instruction, and added a new paragraph after paragraph 6 telling the jurors that none of them were "expected to give up an honest belief that he or she may have as to the weight or effect of the evidence," but that it was their duty, "after full deliberation and consideration of the evidence . . . to agree upon a verdict if you can do so."  D.E. 90 at 4.  The instruction also added some language concerning Mr. Jones' burden of proof.  We discuss that language in the text.

court's time, and the expense of having to try the case again. *See* D.E. 90 at 1–5. The jury finished its deliberations on January 23 without reaching a verdict, and renewed its deliberations on January 24. After two hours of deliberations on January 24, the jury returned a verdict in favor of Deputy Webb. *See* D.E. 86 at 1–3; D.E. 77.

As indicated in footnote 3, the district court added some language to the standard Eleventh Circuit modified *Allen* charge. This additional language concerned Mr. Jones' burden of proof: "You must also remember that if the evidence in this case fails to convince you . . . that the plaintiff has proven each element of his case, then the defendant is entitled to a unanimous verdict in his favor. If the plaintiff has proven each element of his case, then the plaintiff is entitled to a unanimous verdict in his favor." D.E. 90 at 4.

Mr. Jones argues that the district court should have explained that his burden was to prove his case only by a preponderance of the evidence. But that contention ignores the fact that the district court told the jury to consider its last charge "in conjunction with all of the other instructions [it] ha[d] previously given you." *Id.* at 5. Because the previous jury instructions clearly explained that Mr. Jones had to prove the elements of his case only by a preponderance of the evidence, *see* D.E. 85 at 89–90, the district court did not abuse its discretion in declining to repeat that standard again.

9

Finally, to the extent Mr. Jones is arguing that the adapted and modified *Allen* charge was unduly coercive, that contention is foreclosed by our precedent. *See Brooks v. Bay State Abrasive Prods., Inc.*, 516 F.2d 1003, 1004 (5th Cir. 1975) (modified *Allen* charge not coercive even though jury—which had only been deliberating for about three hours—was given charge at around 11 p.m. and returned its verdict at 11:09 p.m.).[4]

### III.

The judgment in favor of Deputy Webb is affirmed.

**AFFIRMED.**

---

[4] Because we conclude that the district court did not err in its handling of the trial, we reject Mr. Jones' argument that he was entitled to a new trial due to the cumulative prejudicial effect of the alleged errors.